# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| TERRI LYNN GUZMAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  5:15-cv-00649-HGD |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

Plaintiff, Terri L. Guzman, filed an application for a period of disability insurance benefits under the Social Security Act on January 13, 2012, alleging that she became disabled on January 27, 2009.  (Tr. 169-73, 196).  Plaintiff's initial application was denied.   She appealed and requested a hearing before an Administrative Law Judge (ALJ).  This hearing was held on May 30, 2013.  On August 23, 2013, the ALJ issued a decision denying plaintiff's application.  (Tr. 12-29).  The Appeals Counsel denied plaintiff's request for review on February 27, 2015.  (Tr. 1-7).  This case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## I.     ALJ Decision

Disability under the Act is determined under a five-step test.   20 C.F.R. § 404.1520.   First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.   20 C.F.R. § 404.1520(a)(4)(i).   "Substantial work activity" is work that involves doing significant physical or mental activities.   20 C.F.R. § 404.1572(a).   "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b).   Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.   20 C.F.R. § 404.1520(a)(4)(ii).   Absent such impairment, the claimant may not claim disability. *Id.*   Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.   If such criteria are met, the claimant is declared disabled.   20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.   The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments.   20 C.F.R. § 404.1520(e).   In the fourth step, the ALJ determines

whether the claimant has the RFC to perform past relevant work.  20 C.F.R.

§ 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past

relevant work, then the claimant is deemed not disabled. *Id.*  If the ALJ finds that the

claimant is unable to perform past relevant work, then the analysis proceeds to the

fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the

ALJ must determine whether the claimant is able to perform any other work

commensurate with his RFC, age, education and work experience.  20 C.F.R.

§ 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove

the existence in significant numbers of jobs in the national economy that the claimant

can do given the RFC, age, education and work experience.  20 C.F.R.

§§ 404.1520(g) and 404.1560(c).

Following this five-step procedure, the ALJ found that plaintiff has the

following severe impairments: degenerative disc disease of the lumbar, cervical and

thoracic spines and peripheral neuropathy.  (Tr. 15).  The ALJ further found that

plaintiff's condition did not meet or medically equal the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R.

§§ 404.1520(d), 404.1520(d), 404.1525 and 404.1526.  (Tr. 16).

The ALJ further found, based on the entire record, that plaintiff has the RFC

to perform a range of medium work as defined in 20 C.F.R. § 404.1567(c).  He found

that plaintiff can occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds.  She can stand and/or walk, with normal breaks, for six hours during an eight-hour workday.  She can frequently climb ramps and stairs but never climb ladders, ropes or scaffolds.  She can frequently balance, stoop, kneel, crouch and crawl.  She must avoid concentrated exposure to extreme temperatures, hazardous machinery and unprotected heights.  (Tr. 17).

The ALJ found that plaintiff is capable of performing past relevant work as a cashier and cleaner.  Therefore, he concluded that plaintiff is not disabled under the Social Security Act.  (Tr. 22-23).

## II.   Standard of Review

Judicial review is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is

reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## III.   Findings by ALJ

The ALJ found that plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar, cervical and thoracic spines and also suffered from peripheral neuropathy.  (Tr. 15).

With regard to her mental health, the ALJ noted that plaintiff takes medication for symptoms of depression related to her back pain.  However, there is no evidence that she has ever been to mental health counseling or seen a psychologist or psychiatrist.  Thus, the ALJ found that plaintiff's depression was well-controlled on

medication.  He further gave great weight to the state agency psychiatric consultant who found plaintiff had no severe mental impairment.  (Tr. 15)

The ALJ also found that plaintiff was obese but that it has not resulted in any significant limitation of her ability to do basic work activities.  Therefore, he found it to be a non-severe impairment.  (Tr. 15).  He also found that her right knee pain and alleged carpal tunnel syndrome in both hands did not qualify as severe impairments. (Tr. 15-16).

Regarding her claim of irritable bowel syndrome, the ALJ noted that plaintiff testified at the hearing that she has chronic diarrhea and uses the bathroom up to seven times a day, and often has accidents.  However, he further noted that a review of the record finds no evidence that she is receiving any current treatment for this complaint.  The record indicates that she underwent an esophagogastroduodenoscopy and colonoscopy more than three years ago which revealed a normal espophagus, gastritis and diverticulitis.  It was recommended that she repeat her colonoscopy in ten years.  A review of the records by the ALJ revealed no evidence that plaintiff had ever been diagnosed with irritable bowel syndrome, and her current medications showed no evidence that she is taking any medication for chronic diarrhea or irritable bowel syndrome.  She only takes Prilosec for acid reflux.  (Tr. 16).

The ALJ also noted that plaintiff has a history of arthroscopic surgery to her right shoulder in May 2004 due to impingement and acromioclavicular joint arthritis. She also had a cervical fusion, with a herniated nucleus pulposis at C5-6 and C6-7 levels, as well as a history of surgery to her left foot for plantar fasciitis in 2006. However, the ALJ states that there are few, if any, documented complaints or treatment during the period of alleged disability.  Examinations by Dr. Sherry Lewis on January 26, 2011, and February 13, 2012, were essentially normal, with full ranges of motion and no evidence of swelling or tenderness noted.  (Tr. 16).

Based on this, the ALJ concluded that plaintiff's allegations of right knee pain, bilateral carpal tunnel syndrome, neck pain, and right shoulder pain, singly or in combination with her severe impairments, have not resulted in any significant limitations on her ability to perform work-related activities and, therefore, do not constitute severe impairments.  (Tr. 16).

According to the ALJ, plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526).  Specifically, the ALJ noted plaintiff's degenerative disc disease does not meet Listing 1.04 because there is no evidence of nerve root compression, consistent limitation of motion of the spine, motor loss, sensory or reflex loss, or positive

straight leg raising test.  There is also no evidence of nerve root compression or spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication.  He found that plaintiff does not meet Listing 11.14 because she does not have disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dextrous movements or gait and station.  (Tr- 16-17).

After consideration of the record as a whole, the ALJ set out his findings regarding plaintiff's RFC, in which he found her capable of performing a range of medium work as set out above.  (Tr. 17).  The ALJ noted that he must follow a two-step process in which he must first determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce plaintiff's pain or other symptoms.

Second, once an underlying physical or mental condition that could reasonably be expected to produce plaintiff's pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence and limiting effects of the plaintiff's symptoms to determine the extent to which they limit plaintiff's functioning.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record.  (Tr. 17).

At the hearing on May 30, 2013, plaintiff reported constant burning, tingling, numbness and pain in her feet, primarily her left foot.  She also has problems when sitting for long periods.  She rated her pain as an eight to nine out of ten.  She stated that her pain interferes with her concentration and estimated that she could only walk for five to ten minutes before needing to sit or lie down for 20 to 30 minutes.  She also complained about knee pain and rated that pain as six out of ten.  In addition, she testified that she has back pain which burns and throbs.  She rated this pain as eight out of ten and stated that it is relieved with lying down.  She also had surgery to her neck for a fusion.  She now has constant pain which radiates into her shoulders and arms.  Her fingers also tingle.  She estimated that she could use her arms for up to an hour at a time.  She can sit for no more than one hour and has irritable bowel syndrome, with chronic diarrhea.  She testified that she used the bathroom up to seven times daily and often has accidents.  According to plaintiff, her daily activities include lying down a lot and propping her feet up.  Her spouse does the household chores and grocery shopping.  She stated that she might go to the store once a month. She can drive but usually does not because she takes a lot of medication. (Tr. 17-18).

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  However, he further found

that her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.  (Tr. 18).

According to the ALJ, the objective evidence does establish a basis for her physical impairments, including degenerative disc disease and peripheral neuropathy. However, he did not believe that they were so severe that she would be unable to perform basic work activities.  He noted that plaintiff reported that she is able to perform fairly normal daily activities, such as prepare simple meals, sweep, dust and do laundry.  She also reported going fishing once a week.  (Tr. 18, citing Ex. B7E). According to the ALJ, although plaintiff testified that she lies in bed for up to five hours a day, there is no evidence that any physician has placed any limitations on plaintiff that result in her inability to perform her daily activities or inability to work. (Tr. 18).

The ALJ acknowledged that plaintiff has degenerative disc disease and peripheral neuropathy.  However, he states that the medical evidence or record shows that the severity of these conditions would not preclude her from performing work activity.  A magnetic resonance imaging (MRI) of the claimant's lumbar spine in February 2005 showed degenerative disc disease at the L4-5 and L5-S1 levels and bulging discs at the same levels.  Another MRI in November 2008 showed disc dessication at the L4-5 and L5-S1 level, broad-based disc bulge at the L4-5 level, and

a small disc protusion at the L5-S1 level.  Her back pain was conservatively treated with medication and physical therapy and no surgery was recommended.  An MRI of her cervical spine in August 2009 also revealed degenerative changes at the C4-5 level, with just very mild stenosis.  Although she had complaints of persistent pain, numbness and tingling in her lower extremities, electromyography (EMG) and nerve conduction studies on April 22, 2009, revealed no electrophysical evidence of a large fiber peripheral polyneuropathy, lumbosacral radiculopathy, or plexopathy in her lower extremity.  She was treated with medication, Neurontin.  According to the ALJ, plaintiff's back pain continued to persist, especially after she had a motor vehicle accident in June 2009.  An updated MRI scan of her lumbar spine on August 2, 2009, continued to show degenerative disc disease with stenosis at the L4-5 level.  An x-ray of her thoracic spine on August 8, 2012, also revealed multi-level degenerative changes.  (Tr. 18).

Treatment records from the Tennessee Valley Pain Consultants, which began in 2010, show that plaintiff was prescribed Percocet and Neurontin for her symptoms of pain, numbness and tingling in her legs.  She also was administered a series of epidural steroid injections.  Dr. Ronald Collins, M.D., observed plaintiff ambulate independently and that her gait was normal.  His examinations throughout 2010 and 2011 revealed that she had normal ranges of motion; her circulation, motion, and

sensations were intact in al extremities; and muscle mass was symmetrical.  There is no evidence of emergency room visits between her generally scheduled six-week visits to Dr. Collins.  There is also no evidence that he referred her to a specialist for physical therapy.  There is also no evidence in the record that additional surgery was ever recommended for plaintiff.  The ALJ noted that plaintiff's examinations by Dr. Collins were consistently unchanged from his previous examinations through January 2013.  They showed normal ranges of motion, intact sensations in all extremities, and normal strength in her lower extremities.  (Tr. 19).

The ALJ also reviewed plaintiff's comprehensive examinations by Dr. Lewis that occurred in January 2011 and February 2012.  The latter examination was generally unchanged from the earlier one.  Dr. Lewis observed plaintiff in no acute distress with normal gait and using no assistive device.  Dr. Lewis found plaintiff to have tenderness the entire length of her spine.  Her straight leg test was negative in both the sitting and supine positions.  She noted that she found it interesting that, during the range of motion examination, plaintiff reported that both dorsiflexion and plantar flexion of each of her feet caused her back (rather than her ankles) to hurt.  She states she does not know the reason for this.  Plaintiff's joints revealed no tenderness, swelling, deformity, or temperature abnormalities.  Ranges of motion were all full, without clicks or crepitus.  Her muscle strength was also normal at

5+/5+. She was negative for traditional trigger points. Dr. Lewis opined that plaintiff was able to perform activities of work.

The ALJ continued, stating that plaintiff has degenerative disc disease and peripheral neuropathy but that the severity of these impairments would not preclude her from working within the above-stated RFC. (Tr. 19). He then assessed the credibility of plaintiff's statements pursuant to 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p. (Tr. 20).

In that regard, he noted that plaintiff testified at the hearing that she was experiencing constant pain which she rated as an eight or nine out of ten. She indicated that she had this pain even when taking her medication. However, the ALJ noted that plaintiff was able to testify in a clear and coherent manner during the lengthy hearing, which he found to be indicative that her pain level was much less than claimed. (Tr. 20).

Plaintiff also estimated that she could walk for only five to ten minutes and sit for no more than one hour. She also indicated that she needed to lie down for up to five hours daily. However, the record shows that plaintiff reported on her Function Report that she is able to perform a wide range of daily activities, including preparing simple meals, minor sweeping, minor dusting, and folding laundry. She also reported that she goes outside daily, goes shopping twice monthly, and goes fishing once a

week.  Furthermore, the ALJ noted that Dr. Lewis found plaintiff to have negative straight leg tests, normal ranges of motion, and normal strength at 5/5.  He concluded that neither the objective medical evidence nor the testimony of plaintiff established that her ability to function has been so severely impaired as to preclude all types of work activity.  (Tr. 20).

In addition, the ALJ stated that plaintiff's work history shows that she worked only sporadically prior to the alleged disability onset date, raising questions as to whether her continuing unemployment is actually due to medical impairments.  By her own admission, even before she alleges she became disabled, she did not work consistently.  In fact, the record shows that she did not work at all for several years.  According to the ALJ, such conduct does not help her credibility when plaintiff alleges, as she does now, that she cannot work at all.  (Tr. 20).

The ALJ found that the record evidence reflects plaintiff has been prescribed and has taken appropriate medications, and the medical record reveals that these have been relatively effective in controlling her symptom of pain.  She has not alleged side effects and the record reflects no complaints of side effects to her treating physicians.  (Tr. 20).

The ALJ also noted that, in view of plaintiff's complaints of severe pain, one would expect to see some evidence of restrictions placed on plaintiff by a treating

physician.   A review of the record reflects that no restrictions have been recommended by a treating physician.  The record also does not contain any opinions from any treating or examining physicians that indicate plaintiff is disabled or even has limitations greater than those determined by the ALJ.  The ALJ gave great weight to the opinions of the State agency medical consultant in determining plaintiff's RFC. He also gave great weight to the opinion of Dr. Lewis that plaintiff is able to perform work because this opinion is consistent with the objective evidence as discussed above.  (Tr. 21).

The ALJ also noted that plaintiff underwent a psychological examination with Dr. Thomas Tenbrunsel on February 1, 2011, in connection with a prior application. He found that her symptoms met the criteria for diagnosis of an adjustment disorder, with mixed anxiety and depressed mood and psychological factors affecting physical condition.  The ALJ found that plaintiff has no severe mental impairment based on the evidence that she received no mental health treatment and her symptoms are stable on medication.  The ALJ gave substantial weight to Dr. Tenbrunsel's opinion that plaintiff had no psychological reason that she could not maintain employment, understand, remember and carry out instructions, and respond appropriately to supervisors and co-workers.  The ALJ found that this is consistent with the record overall.  (Tr. 21).

The ALJ also reviewed the results of an intellectual assessment that plaintiff underwent at the request of her attorney.  The assessment occurred on March 26, 2013, and was performed by Dr. Christine Lloyd, Ph.D.  Plaintiff reported that she has a history of learning problems, having an eighth grade education and being retained several grades.  She did not recall ever being diagnosed with a specific learning disability.  She did not obtain a GED and does not have any technical training.  She was administered the Wechsler Adult Intelligence Scale-III (WAIS) test.  She performed in the Borderline Range overall with a full-scale IQ of 71.  According to Dr. Lloyd, there is a 95% chance that she has a true Full Scale IQ score within the range of 68 to 76.  Based on her findings, Dr. Lloyd opined that plaintiff would be best suited for an unskilled position.  The ALJ noted that a review of the record found no evidence that she had deficits in adaptive behavior prior to age 22, as required by the Social Security Regulations.  Also, plaintiff reported in forms completed in connection with her application that she is able to perform household chores, needs no reminders to take her medication, goes fishing and grocery shopping, and holds a valid driver's license.  (Tr. 21)

Dr. Tenbrunsel also noted that plaintiff was clean and well-groomed and was able to read, write, recall information after a brief delay, recognize familiar objects, and name them.  The ALJ asserts that these activities are inconsistent with the IQ

scores assessed by Dr. Lloyd and are consistent with a higher intellectual functioning. The ALJ did, however, agree with Dr. Lloyd that plaintiff should be limited to unskilled work.  (Tr. 22)

Based on this, the ALJ concluded that plaintiff is able to perform her past work as a cashier and cleaner, as they do not require performance of work-related activities precluded by her RFC.  (Tr. 22).  Consequently, the ALJ found plaintiff to be not disabled under the Social Security Act.  (Tr. 23).

## IV.    Plaintiff's Argument for Reversal

In her briefs (Docs. 11 & 13), plaintiff asserts that: (1) giving great weight to the opinion of Dr. Lewis and non-examining sources was not supported by substantial evidence; (2) rejecting the test scores of the testing by Dr. Lloyd was an error of law and not supported by substantial evidence, including the finding that there was not a deficit in adaptive skills; (3) finding that plaintiff's irritable bowel syndrome, neck pain and shoulder pain, and other impairments were not severe and, therefore did not have to be considered in determining the limitations on the plaintiff's ability to work was erroneous; and (4) the ALJ's opinion failed to properly apply 42 U.S.C. § 423(d)(5)(A) and is not supported by the great weight of the evidence.  (Tr. 10-11).

V.     **Discussion**

Plaintiff was found to have the ability to perform a range of medium work with certain limitations regarding climbing ladders, ropes and scaffolds and environmental considerations.  Plaintiff notes that there were no limitations placed on plaintiff due to poor working memory or her Borderline Intellectual Functioning.  She further notes that the ALJ found that she does not have a severe impairment involving pain from her neck into her shoulders and a right knee problem.  According to plaintiff, the ALJ based his entire decision on a one-time examination by a consultative examiner, Dr. Sherry Lewis.

In particular, plaintiff takes issue with Dr. Lewis' statement that "the claimant was able to perform work activities." (Doc. 11 at 12).  The ALJ gave the opinion of Dr. Lewis "great weight." (Tr. 21).  Plaintiff states that this opinion is not entitled to any weight because the issue of disability is reserved to the Commissioner.  (Doc. 11 at 12-13).  Further, she points out that Dr. Lewis never defines the term "work" in detail, other than stating that these activities include "sitting, standing, walking, carrying, handling objects, hearing and speaking." (*Id.* at 13).  She gives no durational or other limitation for this statement.  (Tr. 584).  Plaintiff also claims that Dr. Lewis' opinion is internally inconsistent, citing her notation that during the range

of motion examination, plaintiff reported both dorsiflexion and plantar flexion of her feet caused her back to hurt.

Despite these claims, Social Security Ruling 96-5P prohibits an ALJ from completely disregarding a physician's opinion, and requires the ALJ to evaluate the opinion. *See* Titles II & XVI: Med. Source Opinions on Issues Reserved to the Comm'r, S.S.R. 96-5P, 1996 WL 374183, at *2-*3 (S.S.A July 2, 1996). In relevant part, the Ruling provides:

> [A]djudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. . . .
>
> However, treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled. However, opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.
>
> In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d). For example, it would be appropriate

to consider the supportability of the opinion and its consistency with the
record as a whole at the administrative law judge and Appeals Council
levels in evaluating an opinion about the claimant's ability to function
which is from a State agency medical or psychological consultant who
has based the opinion on the entire record. . . .   However, pursuant to
paragraph (e)(2) of 20 CFR 404.1527 and 416.927, the adjudicator is
precluded from giving any special significance to the source; *e.g.*, giving
a treating source's opinion controlling weight, when weighing these
opinions on issues reserved to the Commissioner.

S.R.R. 96-5P, 1996 WL 374183, at *2-*3.

In other words, the ALJ must weigh and evaluate any opinion from a medical
source, even if it concerns an ultimate issue reserved for the ALJ.   The only
restriction on the normal evaluative process is that the ALJ is prohibited from
affording such an opinion controlling weight.

It is clear that the ALJ did not invest Dr. Lewis' opinion with controlling
weight.   This is made obvious by the fact that the ALJ gave plaintiff greater
limitations than those found by Dr. Lewis.   (Tr. 17).

There is also no internal inconsistency with Dr. Lewis' opinion.   She stated that
she did not know the reason why dorsiflexion and plantar flexion caused plaintiff's
back to hurt.   Dr. Lewis made this notation "in the name of completeness," but did not
address it as a serious concern, given that such a problem generally results in pain in
the ankles, not the back.[1]   Plaintiff argues that this indicates a failure on the part of

---

[1] Dr. Lewis apparently attempted to make this reference but her notes, when transcribed, read
that these actions "caused her back to hurt, but her ankles."   (Tr. 721) (*sic*).   Since the last phrase of

Dr. Lewis to understand plaintiff's medical condition given her lumbosacral radiculopathy and degenerative disc disease or to review her medical records related to these conditions and give an opinion thereafter. (Doc. 11 at 16). However, plaintiff presents no evidence to indicate that there is any relationship between flexing her ankles and the pain caused by these conditions in her back, and none can be gleaned from the records submitted in evidence. In fact, the record plaintiff points to as evidence of her lumbosacral radiculopathy also notes that her pain medication is working well and that she was in no acute distress. (Tr. 896-97).

In reaching her opinion, Dr. Lewis noted:

On visual inspection, the claimant's back is without deformity, or discoloration. On palpitation spine alignment is normal from C-1 to the coccyx. Tenderness (½ -1+/4+) the entire length of her spine, with continuous tenderness (1+/4+) across lower back just above the left buttock, especially the central two thirds. Straight leg lift is negative in both the sitting and supine positions. Claimant's joints are nontender, and without swelling, deformity, or temperature abnormalities. Range of motion in all joints is full without clicks or crepitous. Muscle strength in all major muscle groups is 5+/5+. The MCP and PIP joints are nontender, have normal range of motion, and have no deformity. Ability to make a fist and release that fist is both negative. Patellar reflex is 4+/4+, equal bilaterally. Dexterity is normal, as evidenced by the ability to pick up objects of varying sizes, shapes and depths. Negative for triggerpoints as defined as distinct areas of tenderness, measuring about the diameter of a penny.

(Tr. 721).

------

this sentence is nonsensical as written, it appears she meant to say that it "caused her back to hurt, but *not* her ankles." *See* http://www.physio-pedia.com/Ankle_Impingement.

Plaintiff points to an examination by Dr. Morely in 2006 which indicated more back problems for plaintiff.  However, these notes were made over two years before her current alleged onset date of January 2009.  Therefore, they are not relevant. Likewise, while Dr. Tejanand Mulphur indicated in April 2009 that plaintiff could possibly have plantar fasciitis along with neuropathy, his opinion was inconclusive. ("She does show *some evidence* of small fiber neuropathy in the form of distal gradient loss to pinprick perception") (emphasis added).  (Tr. 659).  However, the ALJ included peripheral neuropathy in his severe impairment finding and considered this condition when determining plaintiff's RFC.  (Tr. 15).  The ALJ noted that Dr. Lewis' opinion was consistent with the record as a whole, including that no other physician of record indicated that plaintiff's limitations would preclude her from working.  Thus, it was proper for the ALJ to consider Dr. Lewis' opinion and include the limitations he believed were supported by the record as a whole.  *See* 20 C.F.R. § 404.1527(c)(4).

The opinions of the State agency consultants also support the ALJ's credibility and RFC findings.  (Tr. 21, 97-101, 584, 785-86).  State agency consultants are highly qualified specialists who are experts in the Social Security disability programs, and their opinions are entitled to great weight if the evidence supports their opinions.  *See* 20 C.F.R. § 404.1527(c)(2)(I); SSR 96-6p, 61 Fed. Reg. 34,460-01 (July 2, 1996).

In June 2012, Dr. Robert Estock opined that plaintiff could perform medium work with standing, walking, and sitting for six hours during an eight-hour workday. This included frequent climbing of ramps/stairs, ladders, ropes and scaffolds, and frequent balancing, stooping, kneeling, crouching, and crawling, but he opined plaintiff should avoid concentrated exposure to temperature extremes and hazards. (Tr. 97-99).

Also in June 2012, State agency physician Dr. James Upchurch stated that he reviewed all the evidence in the file and agreed with the prior rating, dated February 15, 2012, as it was written.  (Tr. 785-86).  While these physicians did not examine plaintiff or review the entire record, the ALJ, who did so, found their opinions supported by and consistent with the overall record.  (Tr. 21).  As noted, no treating or examining physician assessed plaintiff with any greater limitations than those found by Dr. Lewis or the State agency physicians.  The ALJ's decision reflects that he properly considered all the relevant evidence, including the state agency physicians' opinions, in assessing plaintiff's RFC.  (Tr. 17-22).  *See* 20 C.F.R. §§ 404.1512, 404.1513, 404.1527 and 404.1545(a)(3).

Evidence also reflects that plaintiff underwent fusion surgery of the cervical spine and had a follow-up cervical scan in November 2008 which showed resolution of disc protrusions she had experienced at both the C5-6 and C6-7 levels. (Tr. 638).

A new protrusion at C4-5 was described as producing only mild cervical canal narrowing and slight mass effect of the cervical cord with well-preserved cord signal. (Tr. 638).

An update of the lumbar spine in 2009 revealed degenerative changes at the C4-5 level with very mild stenosis and stenosis at the L4-5 level. (Tr. 18, 630-32). An EMG and nerve conduction study in April 2009 revealed no electrophysical evidence of large fiber peripheral polyneuropathy, lumbosacral radiculopathy or plexopathy in her lower extremity. (Tr. 18, 528-29).

In support of the ALJ's finding that plaintiff's allegations were not entirely credible, the ALJ noted that plaintiff only demonstrated mild weakness in the upper extremities. She had primarily normal ranges of motion and gait, intact circulation, motion and sensation in all extremities, no neurological deficits, and normal muscle mass. (Tr. 553, 677, 690, 731, 748, 766, 882-83, 794-823). This is consistent with the findings of Dr. Lewis set out above.

In addition, plaintiff saw Dr. Ronald Collins at the Tennessee Valley Pain Clinic at regular six-week intervals for medication refills and/or epidural steroid injections. (Tr. 550-56, 677-705, 727-84, 874-923). There is no evidence plaintiff required emergency room care or admittance to a hospital between visits, and Dr. Collins never referred plaintiff to a specialist or for physical therapy. Despite

plaintiff's complaints regarding bending, standing, walking, etc., the ALJ observed that Dr. Collins never advised plaintiff of any limitations or restrictions regarding her activities after her injections.  (Tr. 19, 550-66, 677-705, 727-84).  As noted by defendant, the type, extent, frequency and effectiveness of plaintiff's treatment also supports the ALJ's pain and credibility analysis.  (Tr. 18, 20).  *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v).

The ALJ also noted that plaintiff's work history shows that she worked only sporadically prior to her onset date.  (Tr. 20, 35-36, 55-59, 175, 200, 209).  The ALJ noted plaintiff's poor work history as evidence undermining her allegations of disabling limitations.  (Tr. 20).  *See* 20 C.F.R. § 404.1529(c)(3)(vii).  Other courts have noted that "[a] lack of work history may indicate a lack of motivation to work rather than a lack of ability."  *Persall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).  The ALJ did not err in considering this evidence as probative regarding her credibility.  *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d. Cir. 1998); *Owsley v. Colvin*, 2016 WL 3376103, at *5 (N.D.Ala. Apr. 29, 2016).

Furthermore, as noted, plaintiff's daily activities are fairly normal in that she prepares simple meals, sweeps, dusts, does laundry, shops, drives and goes fishing once a week.  (Tr. 230-31).  These activities also provide substantial support for the ALJ's conclusion that plaintiff's complaints about pain are not entirely credible.

Plaintiff also asserts that the ALJ accorded great weight to Single Decision-Maker Dupree Williams' opinion. This is simply incorrect. Plaintiff refers to the ALJ's citation to exhibit B4A. (Doc. 11 at 21). However, on February 15, 2012, both Dr. Estock and Mr. Williams signed the final determination found in exhibit B4A. (Tr. 100-01). Thus, Dr. Estock adopted Mr. Williams' opinion as his own. Furthermore, the ALJ stated that he accorded great weight to the State agency medical consultant, *i.e.*, Dr. Estock, and did not mention the single decision-maker.

With regard to the plaintiff's mental impairments, the ALJ gave great weight to the February 2011 opinion of Dr. Thomas Tenbrunsel, Ph.D. Dr. Tenbrunsel diagnosed plaintiff with Adjustment Disorder with Mixed Anxiety and Depressed Mood (DSM IV 309.28). However, he noted that plaintiff "is capable of managing her own daily hygiene and daily activities. She appears to be capable of independent living. In my opinion, there is no psychological reason that she could not maintain employment; understand, remember, and carry out instructions; and respond appropriately to supervisors and co-workers." (Tr. 588). The ALJ found this opinion to be consistent with the fact that the record documents medication for depression with no significant problems or limitations. (Tr. 21, 550-567, 580, 669-705, 708-84, 794-908).

Plaintiff also contends that she has an intellectual disability that meets Listing 12.05C for Intellectual Disability.  (Doc. 11 at 28-39).  To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement.   A claimant's impairment must meet all of the specified medical criteria.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Listing 12.05 states, in pertinent part:

Intellectual Disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

The required severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . .

C.  A valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05.  According to the Eleventh Circuit, "[t]o be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

Plaintiff cannot meet this Listing because she does not have significant deficits of adaptive behavior.  Plaintiff's functional report reflects that she prepares simple meals for her granddaughter, prepares meals daily for herself, needs no help or reminders taking medication, can perform household chores, watches TV, socializes with others, goes fishing and has obtained a valid driver's license.  (Tr. 228, 229, 331).  Likewise, Dr. Tenbrunsel's examination reflects that she is able to read, write, recall information after a brief delay, and recognize and name familiar objects.  (Tr. 21-22, 588).  A number of unpublished cases cited by defendant are similar to the situation here and reflect findings that the claimants do not have deficits in adaptive functioning.  *See, e.g., Hickel v. Comm'r*, 539 Fed.Appx. 980, 984-85 (11th Cir. 2014) (despite low IQ and history of special education, evidence plaintiff worked part-time, had friends, regularly attended church, drove and cared for personal needs, as well as doctors' opinions that her functional capacity was better than suggested by her IQ scores, supported finding that she did not have deficits in adaptive functioning); *Garrett v. Astrue*, 241 Fed.Appx. 937, 939 (11th Cir. 2007) (concluding claimant's ability to cook simple meals, perform chores, build model cars, attend church, watch television, play cards, and walk in the mall supported finding that claimant did not have limitations in adaptive functioning).

Plaintiff asserts, nonetheless, that the March 2013 intellectual assessment of Dr. Christine Lloyd, Ph.D., shows that she meets or equals a 12.05 Listing. However, plaintiff was administered WAIS-IV to determine intellectual functioning and performed within the Borderline Range with a WAIS-IV full-scale IQ of 71. Based on her performance, Dr. Lloyd opined that there is a 95% chance that her true full-scale IQ falls within the range of 68-76. Dr. Lloyd further stated that plaintiff obtained an standard score of 80 on tasks requiring verbal comprehension abilities and a standard score of 73 in tasks requiring perceptual/organizational skills. She obtained a standard score of 66 on tasks requiring working memory and a standard score of 81 on tasks assessing processing speed. Dr. Lloyd diagnosed plaintiff with dysthymic disorder and borderline intellectual functioning. (Tr. 836). However, Dr. Lloyd goes on to state that plaintiff's general intellectual level is within the Borderline Mentally Retarded Range, with academic abilities at the third grade level. She further states that, given her limited intellectual and academic capabilities, she would be best suited for an unskilled position. (Tr. 837).

The ALJ accepted Dr. Lloyd's limitation to unskilled work, and the vocational expert (VE) testified that plaintiff could perform her past work as a cleaner and cashier. (Tr. 22, 58). Despite her low IQ, the record supports the ALJ's finding that

plaintiff's adaptive functioning was sufficient to find that she did not meet the 12.05(C) Listing.

## VI.   Conclusion

Because the ALJ's decision is supported by substantial evidence, the decision of the Commissioner is due to be AFFIRMED.  A separate order will be entered.

DONE this 28th day of October, 2016.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE